IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BIBLE BAPTIST CHURCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-93-Z-BR |
| | § | |
| CHURCH MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR SUMMARY JUDGMENT

The Motion for Summary Judgment filed by Defendant Church Mutual ("Church Mutual"), (ECF 23), has been referred to the undersigned for consideration and recommendation. (ECF 51). Upon referral of the Motion, the undersigned ordered supplemental briefing on three questions and, after receipt of answers thereto, heard oral argument on December 13, 2022. (ECF 52; ECF 56; ECF 57; ECF 58). Having considered the briefs and appendices submitted, the argument of the parties, and the relevant law, it is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the Motion be granted in part and denied in part.

## I.    BACKGROUND

This case involves a property insurance dispute between Bible Baptist Church ("Bible Baptist"), a house of worship in Dumas, Texas, and Church Mutual, its insurer. (ECF 24). On March 13, 2019, Bible Baptist's property, which was insured under a policy issued by Church Mutual, was damaged in a storm. (*Id.* at 8). The damage to the roof of Bible Baptist's church building was broken down by the parties into three sections:



(ECF 45 at 10).

Roof Areas A and B, as depicted in Bible Baptist's Appendix, are the only areas subject to this dispute. (ECF 24 at 9). The large white section between them, which the parties refer to as Roof Area C, was also the subject of an insurance claim, which Church Mutual previously paid and thus is not in dispute in this case. (*Id.* at 11).

Preceding the 2019 storm, a separate weather event struck the property in 2017, causing damage that resulted in the replacement of Roof Area B,[1]  (ECF 44 at 9), but apparently no other

---

[1] Church Mutual presents testimony from Zac Ammons, Bible Baptist's roofing contractor, in which Ammons states that it was his view in 2017 that Roof Area A should be replaced. (*Id.* at 18). However, only Roof Area B was replaced. (ECF 44 at 9).

repairs. Indeed, Bible Baptist offers a declaration from Johnny Widener, Bible Baptist's pastor, wherein he states that Roof Areas A and B "were in good working order" and there was only one "small[,] isolated leak" in Roof Area A after the 2017 storm but before the 2019 storm. (ECF 45 at 2).

After tendering payment for some damage to the church campus, a dispute arose between the parties and Bible Baptist instituted this suit. (ECF 24 at 9).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual issues that are material under the applicable substantive law. *See id*.; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075–76 n.14 (5th Cir. 1994).

The Court must next review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt., Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation marks omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 n.7 (5th Cir. 1992) (Wisdom, J., dissenting). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citations omitted).

If "the movant bears the burden of proof on an issue, either because he is the plaintiff or, as a defendant, he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194 (emphasis in original). The "beyond peradventure" standard imposes a "heavy" burden. C*ont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. 2007) (citing *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.,* 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194)).

### III.    ANALYSIS

In the Complaint, originally filed in Moore County, Texas and subsequently removed to this Court, Bible Baptist asserts a claim for breach of contract and subsidiary extracontractual claims for violation of the prompt payment requirement found in § 542.051 of the Texas Insurance Code, and bad faith in handling the claim under various subsections of § 542 of the Texas Insurance Code. (ECF 1-5 at 5–7). Bible Baptist also asserts a claim for attorneys' fees and expenses under §§ 38.001, 38.002, and 38.003 of the Texas Civil Practice and Remedies Code, and §§ 541.152 and 542.060 of the Texas Insurance Code. (*Id.* at 7).

Church Mutual now moves for summary judgment, arguing as a threshold matter that Bible Baptist's breach of contract claim is not valid because it cannot prove causation. (ECF 24 at 13). Church Mutual invokes the concurrent causation doctrine and asserts that Bible Baptist has not meet its burden to segregate covered and non-covered damage. (*Id.* at 13–15). Upon its success at summary judgment on the breach of contract claim, Church Mutual notes, the extracontractual claims fail as a matter of law. (*Id.* at 21). In the alternative, Church Mutual contends that the bad faith claim is defeated by the *bona fide* dispute doctrine. (*Id.* at 23). Finally, Church Mutual argues that even if it fails in all other respects at this stage, Bible Baptist's award must be judicially reduced in line with the applicable policy's sublimit on code upgrades. (*Id.* at 25). The undersigned will address each of those arguments in turn.

### a.    Concurrent Causation

Under Texas law, to prove a breach of contract, a plaintiff must show: (1) the existence of a valid contract, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of contract, and (4) the plaintiff's damages as a result of the breach. *Brooks v. Excellence Mortg.*

*Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied). Thus, in an insurance policy context, a plaintiff must prove the existence of a valid insurance policy covering the claim and entitlement to money damages on that claim. *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 468 (Tex.App.—Houston [1st Dist.] 2015, pet. denied).[2]

Texas law requires an insured to bear the burden of proving its damages are covered by the policy in question. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). The concurrent causation doctrine, as cited by Church Mutual, provides that "when…covered and non-covered perils combine to create a loss the insured is entitled to recover only that portion of damage caused solely by the covered peril(s)." *Wallis v. United Service Auto. Ass'n*, 2 S.W.3d 300, 302–03 (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965); *Warrilow v. Norrell*, 791 S.W.2d 515, 527 (Tex.App.—Corpus Christi 1989, writ denied)); (*see also* ECF 24 at 14). If the doctrine is applicable in a particular case, the insured is then obligated to present "some evidence upon which the jury can allocate the damage attributable to the covered peril." *Wallis*, 2 S.W.3d at 303.

As a basis for asserting the applicability of the doctrine, Church Mutual cites "multiple weather events," specifically the 2017 and 2019 storms, and general wear and tear. (ECF 24 at 16–18; ECF 57 at 5). Bible Baptist argues against applying the doctrine here because, definitionally, it can only apply to perils and other fortuitous risks, not things certain to occur, such as wear and

---

[2] Because this matter comes for consideration pursuant to diversity jurisdiction, application of substantive Texas law is appropriate. *See Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

tear. (ECF 44 at 15–17). This most basic dispute is at the heart of the undersigned's recommendation on the doctrine's applicability.

The Fifth Circuit examined this issue very recently in *Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 34 F.4th 496 (5th Cir. 2022), and *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.* 12 F.4th 467 (5th Cir. 2021). In both cases, that court found the law critically undeveloped in this area to a degree that necessitated the certification of three questions to the Texas Supreme Court. (ECF 44 at 13). Those questions, which were accepted twice but remain unanswered, concerned the applicability of the doctrine to wear and tear, as well as the allocation duty of the insured.[3] *Overstreet*, 34 F.4th at 499; *Frymire*, 34 F.4th at 472. They are very similar to the questions posed by this case. Without guidance from the Fifth Circuit or the Texas Supreme Court, however, the undersigned will attempt to fashion answers, in accordance with the Fifth Circuit's instructions to lower courts on the making of an *Erie* guess. *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d

---

[3] Church Mutual cautions against looking to *Frymire* and *Overstreet* for guidance for two reasons. (ECF 46 at 9). First, both *Frymire* and *Overstreet* were ultimately settled. (*Id.*). As a result, the underlying decisions granting summary judgment remain good law and "support summary judgment in this case upon application of the doctrine. (*Id.*). Church Mutual is correct that because the cases settled, neither Judge McBryde's decision in *Overstreet* nor Judge Boyle's decision in *Frymire* were affirmed or reversed. However, summary judgment in both cases rested entirely on the second, allocation portion of the concurrent causation doctrine. *Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 2021 WL 1238299, at *3–4 (N.D. Tex. 2021); *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.* 2020 WL 7259335, at *3 (N.D. Tex. 2020). Because Bible Baptist questions the applicability of the doctrine as a threshold matter, the undersigned must first look there. Once applicability has been determined, allocation will be ripe for consideration.

Second, Church Mutual contends that the certified questions are not dispositive in this case because both of those cases dealt with roof damage where the underlying wear and tear "arguably did not affect the roofs' functionality." (ECF 46 at 10). Conversely, it argues, Bible Baptist's own expert opined that Roof Area A required full replacement well before the 2019 storm that gave rise to this case. (*Id.*). After drawing a comparison between this case and *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597 (Tex. 1993), Church Mutual concludes that because there is ample evidence of "excluded or non-covered damage," the doctrine applies.

As with the first argument, the undersigned will address applicability of the doctrine as a matter of law because it was raised by Bible Baptist. That Church Mutual believes applicability is a forgone conclusion does not automatically make it so.

191, 206 (5th Cir. 2007); *see also Phetteplace v. 415 Rue Dauphine, LLC*, 383 F.Supp.3d 629, 630–31 (E.D. La. 2019).

### i.    <u>Applicability of the Doctrine</u>

Bible Baptist and Church Mutual advance essentially the same definition of the doctrine, that is, when covered and non-covered perils combine to cause a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered perils. *Wallis*, 2 S.W.3d at 302–03; *see also Lyons*, 866 S.W.2d at 601 (citing *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965)); (ECF 24 at 14; ECF 44 at 15). For ease of analysis, the undersigned will refer to first portion of the definition, that concerning covered and non-covered losses, as the applicability clause, while the second portion, that concerning the burden to segregate losses, will be the allocation clause.

Church Mutual's summary judgment ground as to the causation element of Bible Baptist's breach of contract claim rests initially in the allocation clause, arguing that Bible Baptist cannot meet its burden to segregate damages between covered and non-covered losses. (ECF 24 at 14). Bible Baptist's main argument against applying the doctrine in this case rests in the applicability clause, asserting the doctrine is only meant to apply, by virtue of the text, to fortuitous risks and unforeseen events. (ECF 44 at 15).

Reviewing the language used by Texas courts to define the doctrine on its face, it is apparent the applicability question will be determined by the definition of the term 'peril.' The undersigned ordered supplemental briefing on this issue from the parties and, perhaps unsurprisingly, they returned with starkly different definitions. Church Mutual characterizes peril to mean any type of loss, fortuitous or not, known or not, and makes no effort to distinguish any

sort of damage that may be suffered by a property over the course of a policy period. (ECF 57 at 2). Naturally, this proposed definition would include wear and tear. The undersigned is unpersuaded by this broad and all-encompassing definition.

In *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, the Fifth Circuit noted that "[t]he term 'peril' has an industry usage," and specifically adopted the definition found in Black's Law Dictionary, which defines the term as "[t]he cause of a risk of loss to person or property; esp., the cause of a risk such as fire, accident, theft, forgery, earthquake, flood, or illness." 565 F.3d 948, 956 (5th Cir. 2009); PERIL, *see also* Black's Law Dictionary (11th ed. 2019).

Similarly, other courts across the country have, upon embarking on a search for the proper definition of 'peril' in the insurance context, likewise settled on the same definition: that found in Black's Law Dictionary. *See, e.g., Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 306 (Wash. 2012) ("In insurance parlance, 'perils' refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss."); *Gray Ins. Co. v. Old Tyme Builders, Inc.*, 2003-1136 (La. App. 1 Cir. 4/2/04), 878 So. 2d 603, 608, writ denied, 2004-1067 (La. 6/18/04), 876 So.2d 814; *Indep. Sch. Dist. 833 v. Bor-Son Constr., Inc.*, 631 N.W.2d 437 (Minn. Ct. App. 2001); *Len Immke Buick, Inc. v. Architectural Alliance*, 611 N.E.2d 399 (Ohio 1992); *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704, 710 (Cal. 1989) ("The term 'perils' in traditional property insurance parlance refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss."); *Blue Cross v. McDevitt & Street*

*Co.*, 360 S.E.2d 825 (Va. 1987); Michael E. Bragg, *Concurrent Causation and the Art of Policy Drafting: New Perils for Property Insurers*, 20 Forum 385, 386–87 (1984–85).[4]

Having ascertained the definition of peril, it then becomes clear that wear and tear is not covered by the doctrine. Texas courts have held that insurance is designed to protect against unknown risks. *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied). Therefore, risks that are known or in progress cannot legally be insured against. *Id.* Wear and tear is present in virtually every roof. *Frymire*, 12 F.4th at 471. If wear and tear is a certainty, it cannot be insured against and thus is not a peril.

In the face of this set of authorities, Church Mutual offers an excerpt from *State Farm Lloyds v. Johnson*, 290 S.W.2d 886 (Tex. 2009), which, in Church Mutual's telling, uses 'peril' interchangeably with other descriptors of insurance loss. (ECF 57 at 2). The excerpt reads, in its entirety:

> The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. Wear and tear is excluded in most property policies (including this one) because it occurs in every case. If State Farm is correct that appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid.

*Johnson*, 290 S.W.2d at 892–93.

Read in isolation, there is a colorable argument that Church Mutual is correct in that the court intended to use the terms interchangeably and thus there is no functional distinction between

---

[4] The undersigned is aware that some of the cases cited refer to different editions of Black's Law Dictionary. However, the definition is substantially similar across versions.

the types of losses suffered by insureds; nevertheless, Church Mutual's argument turns to ash in the context of the broader opinion. In the paragraphs preceding and following the excerpt, the *Johnson* court considered in detail what the duties of appraisers are, and whether they have the power to differentiate between different causes of loss in their final work product. *Id.* Specifically, the court analogized a case where appraisers assigned a specific value to a cause of loss that was covered but made no finding as to a cause of loss whose coverage was in dispute. *Id.* In that context, the court intended to find that appraisers are able, under the law, to apportion damage to covered and non-covered causes of loss. *Id.* There is no dispute in this case that wear and tear is an excluded cause of loss. The question, rather, and as it relates to the applicability of the doctrine, is whether wear and tear is a peril. Wear and tear can certainly cause, in the long term, loss to property. Indeed, roofs age over time and may fail without any instigating event. But wear and tear is not a peril for the purposes of the doctrine because it is not a fortuitous event. The passage offered by Church Mutual, in the context of the broader opinion, does not have any effect upon the undersigned's ultimate conclusion as to the doctrine.

Church Mutual also provides a lengthy footnote in its supplemental brief that it claims supports the proposition that other courts have applied the doctrine to cases involving ordinary wear and tear. (ECF 57 at 4 n.11). A close reading of those cases, which number no fewer than eight, reveals applications of the doctrine in the quintessential example of concurrent causation: where multiple storms are at play. (*Id.*); *see e.g.*, *Hamilton Properties v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016). Church Mutual does not provide an instance where the doctrine was successfully invoked with the formula of wear and tear plus storm. In light of that, the definition of peril as detailed above, and the caselaw on the doctrine, the undersigned concludes that the

correct invocation of the doctrine is for multiple storm events, i.e. perils, and does not include wear and tear.

In this case, it serves to consider Roof Area A separate from Roof Area B. Church Mutual's invocation of the doctrine as to Roof Area A is based upon three items: the 2017 storm, the 2019 storm, and general wear and tear. The invocation as to Roof Area B, meanwhile, can only be based upon the 2019 storm and general wear and tear because that portion of the roof was replaced after the 2017 storm. The undersigned, having concluded that wear and tear is not covered by the doctrine, therefore recommends that the doctrine cannot be invoked as to Roof Area B, but it can as to Roof Area A. Accordingly, Church Mutual is not entitled to summary judgment as to Roof Area B.

### ii.    Allocation under the Doctrine

Having concluded that the concurrent causation doctrine is applicable only to Roof Area A, the undersigned now turns to Church Mutual's main ground for summary judgment, that Bible Baptist has not segregated covered and non-covered losses, which the undersigned refers to as Bible Baptist's allocation burden. Because insurers are only liable for those losses covered by the policy, upon determining that the doctrine is applicable, insureds have the burden of presenting "some evidence affording the jury a reasonable basis on which to allocate the damage." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citing *Lyons*, 866 S.W.2d at 601).

Precisely what qualifies as "some evidence" is the subject of debate. As the Fifth Circuit in *Frymire* noted, Texas courts are not clear on the question of whether an insured can satisfy its allocation burden with "evidence suggesting that the covered peril caused the entirety of the loss."

*Frymire*, 12 F.4th at 472. Much like the applicability question in this case, the undersigned will attempt to fashion an answer.[5]

Bible Baptist contends that its burden, as the insured, is light and is only fatal to a claim when an insured fails to produce any evidence at all of allocation. (ECF 44). Church Mutual counters that this case is analogous to *Sadovsky v. Nationwide Property and Casualty Ins. Co.*, 2019 WL 2165805 (W.D. Tex. 2019), wherein the insured's expert "broadly opined that the roof required replacement." *Id.* at *5; (ECF 24 at 19).

The undersigned is inclined to agree that the burden is light. Indeed, in cases reviewed by the undersigned where summary judgment was granted on non-allocation grounds, there was little or no evidence present as to allocation of covered and non-covered losses. *See, e.g., Certain Underwriters*, 892 F.3d at 169–72; *Tchakarov v. Allstate Indemnity Co.*, 2021 WL 4942193 (N.D. Tex. 2021). In at least one case where an expert retained by the insured opined that all claimed losses are attributable to one event, courts have denied summary judgment and found that testimony sufficient. *Labourdette v. State Farm Lloyds*, 2021 WL 2042974 (S.D. Tex. 2021).

Church Mutual's preferred case, *Sadovsky*, does not lend the support Church Mutual alleges. While it is true that the expert in that case spoke broadly of the damage, like here, the report in *Sadovsky* did not contain such basic details as the date of loss and its recommendation of

---

[5] Before turning to the substance of the issue, the undersigned pauses here to address Bible Baptist's argument that Church Mutual alone bears all burdens at this stage because the concurrent causation doctrine is an affirmative defense or coverage avoidance. (ECF 44 at 22). In the sea of obscurity that is the concurrent causation doctrine at the present time, one thing is crystal clear: "the doctrine of concurrent causation is not an affirmative defense or avoidance issue." *Wallis*, 2 S.W.2d at 303; *see also Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, 2019 WL 3716427, at *4 (N.D. Tex. 2019). For that reason, the undersigns finds no credibility in this argument by Bible Baptist.

replacement rested to a fair degree on the fact that the original roof tiles were no longer available. *Sadovsky*, 2019 WL 2165805 at *4.

The evidence here, namely, Ammons' report, is of a similar kind to the evidence in *Labourdette* and *Frymire*. (ECF 45 at 8–12); 2021 WL 7259335 at *3; 2021 WL 2042974 at *5. Although the Fifth Circuit in the appeal of *Frymire* wondered whether a declaration or affidavit attributing all damage to one event was enough, 12 F.4th at 472, the undersigned believes Texas courts should be taken at their word in requiring only "some evidence." *Lyons*, 866 S.W.2d at 601. The report of Ammons meets that light burden.[6]  Without question, the report is some evidence upon which, to the degree it believes or disbelieves the report, a jury could base its conclusion. Therefore, the undersigned recommends that Bible Baptist has met its burden as to allocation and thus escapes summary judgment under the doctrine as to Roof Area A.[7]

---

[6] The undersigned arrives at this recommendation in concert with its view on the applicability of the doctrine: Texas courts should be taken at their word and federal courts, when sitting in diversity, must faithfully apply their precedents.

Although the trial court in *Frymire* found evidence of a similar character as here insufficient, Texas law requires only *some* evidence. The Ammons materials meet that definition. The Fifth Circuit acknowledged as much in its certification of questions in *Frymire*: "Plaintiffs here *did* produce some evidence—Sandlin's declaration—suggesting that the roof damage was solely caused by the covered hailstorm." 12 F.4th at 472 (emphasis in original).

The efforts by Frymire and Bible Baptist to meet their allocation burden boil down to little more than allocation by non-allocation, i.e. 100% of the loss is covered. Nevertheless, the materials are *some* evidence. Absent clarification from the Texas Supreme Court on what it means by 'some evidence,' the undersigned cannot recommend a partial grant of summary judgment on this basis when there is such evidence in the record, by any plain meaning of the words.

[7] Because the undersigned has previously recommended that summary judgment based on application of the doctrine would be inappropriate as to Roof Area B, this recommendation as to allocation is only applicable to Roof Area A. However, if the doctrine was applicable to Roof Area B, the undersigned would recommend that Bible Baptist has met it allocation burden there as well, for the same reasons.

### iii.    Concurrent versus Independent Causes

There remains one final issue relating to the doctrine to consider, the question of whether the doctrine applies in situations where the complained-off perils are concurrent or independent. Bible Baptist argues that the doctrine only applies to perils that are concurrent with each other, meaning relatively close in time, not those that are separated by months or years. (ECF 44 at 17). Church Mutual did not respond to this argument in its reply. (*See generally* ECF 46).

Texas courts have long recognized that for causes to be concurrent, one must "[contribute] to the damage produced by the other cause." *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 944 (Tex. Civ. App.—Austin 1968, no writ). Therefore, an insurer only escapes liability under the doctrine when a covered peril and an excluded peril concurrently cause a loss, meaning they must act in concert in some way. *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990); *see also Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 994–95 (5th Cir. 2016).

The discussion of this issue in *Ironwood Building II, Ltd. v. AXIS Surplus Insurance Company* provides a useful illustration. 2020 WL 1234640 (W.D. Tex. 2020). There, a 2016 hailstorm damaged an office building roof. *Id*. at *1. The insurer issued payment on the ensuing claim, but the repairs were never conducted. *Id.* The next year, after Ironwood had obtained a different insurance policy with a second insurer, a tornado severely damaged the building's roof. *Id.* Upon consideration of cross motions for summary judgment, the court rejected an application of the doctrine, holding that there was a genuine dispute as to whether there were two independent or concurrent causes. *Id.* at *4. The insured escaped the doctrine, the court noted, "by proffering evidence that the roof did not leak after the 2016 hailstorm but did leak after the 2017 tornado, to

the point of requiring replacement." *Id.* That evidence "may ultimately show that replacing the roof was necessary as a result of an entirely independent cause, the 2017 tornado." *Id.* The court concluded by suggesting that if the 2017 storm damage subsumed the 2016 storm damage to such a degree that even without the 2016 storm, the 2017 damage would have necessitated a claim, the two events are independent. *Id.* at *5.

Whether the later damage did so subsume was unclear in *Ironwood*, just as it is here. *Id.* There is evidence, in the form of a declaration from Johnny Widener, Bible Baptist's pastor, that the roof areas in question "were in good order and fully functional" prior to the 2019 storm. (ECF 45 at 2). For that reason , there remains is a genuine dispute on that issue to such a degree that summary judgment is not appropriate. Church Mutual is free to present the testimony of Ammons while Bible Baptist is free to present that of Widener, but it is the recommendation of the undersigned that a jury decide "which storm caused which damage." *See Ironwood*, 2020 WL 1234640 at *5.[8]

## b. __Extracontractual Claims__

Bible Baptist asserts a series of extracontractual claims. As to the prompt payment issue, it alleges a violation of § 542.051 *et seq*. of the Texas Insurance Code. (ECF 1-5 at 5). As to bad faith, it alleges violations of §§ 541.051, 541.060, and 541.061 of that code. (*Id.* at 5–6).

---

[8] By way of summary, thus far, the undersigned recommends and concludes that (1) wear and tear is not a peril for the purposes of the concurrent causation doctrine; thus, the doctrine only applies to Roof Area A, and Bible Baptist has met its allocation burden as to that roof section; (2) in the alternative, there is a genuine issue of material fact as to whether the 2017 and 2019 storms are independent or concurrent causes for the purposes of the doctrine, further meriting denial of the Motion.

Church Mutual moves for summary judgment as to these claims on two grounds. First, it asserts that, upon its victory on the concurrent causation issue, these claims fail as a matter of law. (ECF 24 at 21). Second and alternatively, it argues that the *bona fide* dispute rule precludes liability. (*Id.* at 23).

Section 541.051 places the following requirements on insurers:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy;

(B) the benefits or advantages promised by the policy; or

(C) the dividends or share of surplus to be received on the policy;

(2) make a false or misleading statement regarding the dividends or share of surplus previously paid on a similar policy;

(3) make a misleading representation or misrepresentation regarding:

(A)the financial condition of an insurer; or

(B)the legal reserve system on which a life insurer operates;

(4) use a name or title of a policy or class of policies that misrepresents the true nature of the policy or class of policies; or

(5) make a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy.

Section 541.060 requires:

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A) a claim with respect to which the insurer's liability has become reasonably clear; or

(B) a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4) failing within a reasonable time to:

(A) affirm or deny coverage of a claim to a policyholder; or

(B) submit a reservation of rights to a policyholder;

(5) refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;

(6) undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim;

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

(8) with respect to a Texas personal automobile insurance policy, delaying or refusing settlement of a claim solely because there is other insurance of a different kind available to satisfy all or part of the loss forming the basis of that claim; or

(9) requiring a claimant as a condition of settling a claim to produce the claimant's federal income tax returns for examination or investigation by the person unless:

(A) a court orders the claimant to produce those tax returns;

(B) the claim involves a fire loss; or

(C) the claim involves lost profits or income.

(b) Subsection (a) does not provide a cause of action to a third party asserting one or more claims against an insured covered under a liability insurance policy.

Section 541.061 states:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

Section 542.056 requires, in relevant part, that insurers notify insureds no later than 15 business days after receipt of all information required of acceptance or rejection of the claim. In the event an insurer requires more time, they must so state in writing but, in any event, may take no more than 45 business days. *Id.*

Insurers have a duty of good faith and fair dealing. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50 (Tex. 1997). They breach that duty when they knew or should have known it was reasonably clear the claim was covered. *Id.* at 56. However, "an insurer's liability under the contract is separate and distinct from its liability for breach of the duty of good faith and fair dealing." *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 536 (S.D. Tex. 1999). To escape liability, a *bona fide* controversy must exist. *Id.* Such a controversy is a sufficient reason to deny, delay, or otherwise fail to make a prompt payment of a claim. *Id.* (citing *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)). In contrast, where no breach of contract claim is sustained, no bad faith claim can survive. *Chrysler Insurance Co. v. Greenspoint Dodge of Houston, Inc.* 297 S.W.3d 248, 254 (Tex. 2009). Importantly, a court may only grant summary judgment where there is no conflict in the evidence. *Giles*, 950 S.W.2d at 56. Where there is evidence on either side of the question, it is a fact issue for the jury. *Id.*

As an initial matter, because the undersigned recommends that Church Mutual's Motion be denied as to the causation element of the breach of contract claim, its first argument as to the extracontractual claims necessarily fails.

Turning to the second argument, the parties offer starkly different views on whether a *bona fide* dispute exists here. Church Mutual asserts that it acted in good faith and there is no evidence of a biased or pretextual claims investigation. (ECF 24 at 24). Bible Baptist, meanwhile, offers

multiple pages of legal authority but no application to the present case. (ECF 44 at 28–30). Indeed, it suggests, without citing to any evidentiary support in the record, that Church Mutual's investigation was unreasonable but never elaborates; instead, it moves on to discuss what violations are covered by the rule. *Id.*

It is apparent from the text used by Texas courts to define the *bona fide* dispute rule that it is only applicable to those requirements that concern denial of policy benefits without reasonable basis. *Hall Arts Center Office, LLC v. Hanover Insurance Co.*, 327 F.Supp.3d, 979, 1000 (N.D. Tex. 2018). The only rule that contains such a requirement is § 541.060(a)(2)(A), which relates to the failure on the part of the insurer to effectuate settlement once its liability becomes reasonably clear. In the undersigned's view, the state of the law surrounding the concurrent causation doctrine provides a basis for a *bona fide* dispute. Sound law and legitimate arguments are found on both sides of the issue, and although the undersigned ultimately reached a conclusion at odds with Church Mutual's position, there is little doubt that a *bona fide* dispute exists.

The undersigned concludes, however, that the *bona fide* dispute rule does not apply to all other portions of Bible Baptist's extracontractual claims. Sections 542.051 *et seq*, 541.051, 541.060, and 541.061 contain affirmative duties for insurers that apply regardless of the ultimate claims decision. So, while Church Mutual's liability as to the claim at issue here was not reasonably clear, its other duties under the Texas Insurance Code were, and fact issues remain as to its satisfaction of those duties. Therefore, the undersigned recommends summary judgment be granted to Church Mutual as to Bible Baptist's claim under § 541.060(a)(2)(A) only.

As a secondary matter on the remaining extracontractual claims, both parties make various assertions on the validity of the claims handling process in this case but offer little more in terms

of evidence. (ECF 24 at 24; ECF 44 at 30). Bible Baptist's appendix includes select communications exchanged over the life of the claim. (ECF 45 at 114–22). However, Church Mutual objects to their consideration by the undersigned. (ECF 46 at 8–9). Because Church Mutual has not carried its burden on the remaining claims, the undersigned does not consider the emails in reaching its ultimate conclusion.[9]

### c. Limit for Code Upgrades

Finally, the undersigned turns to the last matter raised by Church Mutual, that any eventual award Bible Baptist may receive be reduced in accordance with the policy's sublimit for code upgrades. (ECF 24 at 25). In the event of a covered loss, the policy states that Church Mutual will pay a maximum of $100,000 for code upgrades. (ECF 25-2 at 74). Church Mutual contends it has already met this burden by paying on the claim for Roof Area C. (ECF 24 at 27). Bible Baptist does not dispute this assertion.

In reviewing the policy language, the undersigned agrees that it contains a sublimit for code upgrades. Because Bible Baptist has not argued against such a conclusion, under Rule 56(e)(2), the undersigned recommends that any recovery by Bible Baptist be reduced by the value of code upgrades ultimately found at trial.

## IV.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that Church Mutual's Motion for Summary

---

[9] For that reason, the undersigned recommends the objection be overruled as moot without prejudice to Church Mutual re-raising the issue at trial.

Judgment, (ECF 23), be granted as to Bible Baptist's claim under § 541.060(a)(2)(A) of the Texas Insurance Code and the policy sublimit for code upgrades but denied in all other respects.

## V.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 18, 2023.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.    In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).